# Wright v. Commonwealth.

. October 22, 1948.

W. A. Daugherty for appellant.

A. E. Funk, Attorney General, Guy L. Dickinson, Assistant Attorney General, and J. A. Runyon, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellant, Booker Wright, has been convicted of voluntary manslaughter for the killing of his sister-in-law, Lizzie Adkins, and sentenced to twenty-one years' imprisonment.

In the late afternoon of November 2, 1947, Wright's wife, her sister, who had lived with the Wrights since childhood, and two of his sons by a former marriage followed Wright in an automobile with a young woman named Samone Greer. In order to elude his wife, according to Samone, Wright turned off the highway up a creek road to Johnson's store at the village of Beefhide. While Wright was in the store getting cigarettes, Mrs. Wright left her car, came to that in which Samone remained, and started pulling her hair and fighting her. Samone said, "I never raised my hand. I figured I hadn't any right to." Wright came out and tried to get his wife to stop the fight. He got in the car and started it, but his wife climbed on the running board and took out the ignition key and renewed her fight

with Samone. Wright then said, "I guess this will stop you." Then, Samone testified, "He pushed me down between him and the seat and the next thing I remembered she was coming up the road saying, 'Booker, you have killed my sister.'" Samone further testified that she did not hear the shot and did not know who fired it, but Wright was the only person she saw with a pistol. He had been drinking. Johnson, the storekeeper, stated it was "dusky dark" and he had seen Wright with "something in his hand" that he thought was a pistol. One of the sons of the defendant testified that both his stepmother and her sister were on the running board of the car. He heard the pistol fire, and Lizzie say that she was shot. His father said, "He didn't mean to do it." The wounded woman was placed in the automobile and taken to a hospital. Several witnesses testified that on different occasions when the defendant was asked who had shot her he remained silent or said it was an accident . He told one person that "two boys from Beefhide killed her; I don't know them personally." To another he said that "two Wright boys on Beefhide was wringing the gun out of my hand. It was an accident shot." The pistol was found in the defendant's car afterward. He admitted in his cross examination that he had the habit of carrying the pistol between the front seats of the automobile.

The defendant testified he did not know his wife and sons were following him and Samone. When he came out of the store he heard the racket, came to the car, and his wife told him "Lizzie was killed." He denied having the pistol in his hands, and, of course, having fired the shot that killed the woman. He denied having seen some of the witnesses who testified to his silence or statements and having made the statements attributed to him. In short, he denied all the adverse testimony and stated that at the time "nobody knowed" who had shot his sister-in-law. And he still does not know. His wife's testimony is that she had gone to the car telling her sister, "I'm going to ask her to get out like a woman." When she did so, Samone cursed her and hit her over the head with a pistol. Her sister "nailed the gun," and about that time one of her stepsons, Allen Wright, came up and tried to take the pistol away from Samone and her sister, who were "tussling

over it and it went off." Allen got the pistol and said, "Lizzie, he didn't go to do this." She started walking away and fell. Her husband, the defendant, was not in the car but came afterward. She did not see who fired the pistol.

In rebuttal, Allen Wright and his brother, Theodore, denied their stepmother's testimony.

This rather full statement of the evidence manifestly shows that the question of the defendant's guilt was for the jury to answer. It is far removed from the rule upon which the appellant relies; namely, that where guilt is determinable by circumstantial evidence it is not sufficient to convict the defendant, if it is as consistent with innocence as with guilt.

During the course of the Commonwealth's evidence, defendants brought out the fact that some of the witnesses had talked with John Hall. The defendant called him to the witness stand and asked him about his activities in aid of the prosecution. Hall admitted having talked to some of the witnesses, employed an attorney to assist in the prosecution and obtained and paid for an ambulance to bring Allen Wright from a hospital in Huntington, West Virginia that he might testify in rebuttal. Asked why he had done this, the witness answered that the defendant, Wright, had been present when another man shot and killed his son, and he thought that Wright should have been prosecuted for the killing. He denied having sought to influence any witness to testify falsely.

The appellant argues that Hall's activity prevented him from having a fair and impartial trial and that the court should have granted him a new trial under the general provision of sec. 271, subsec. 7, Criminal Code of Practice, which provides that if the court be of opinion that a defendant has not received a fair and impartial trial "from any other cause," he may grant a new trial. The appellant cites several cases making application of this Code provision where acts of third persons, such as the courtroom audience, were deemed to have had a prejudicial effect upon the jury. None of them touch this point. A vengeful spirit offends Christian ethics, and should not intrude upon the administration of secular laws. But so far as we are aware, it has never been

held that such a motive on the part of a private citizen in assisting the Commonwealth in the prosecution vitiates the result or renders the trial impartial and unfair. Aside from the absence of merit in the point, at the defendant's insistence the court let him examine Hall and have him tell the jury what he had done. He proved everything of which he now complains, and has no right to rely upon it as a ground for a new trial.

Perceiving no error, the judgment is affirmed.